CURRY ADVISORS
A Professional Law Corporation
  K. Todd Curry (149360)
185 West F Street, Ste. 100
San Diego, California 92101
Telephone:  (619) 238-0004
Fax Number: (619) 238-0006
e-mail:  tcurry@currylegal.com

Counsel for Defendants
Soleil Management, LLC,
Club de Soleil Vacation Club, and
Tahiti Village Vacation Club

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MITCHELL REED SUSSMAN,

        Plaintiff,

v.

SOLEIL MANAGEMENT, LLC;
CLUB DE SOLEIL VACATION
CLUB; and TAHITI VILLAGE
VACATION CLUB,

        Defendants.

_____

) CASE NO. 5:18-cv-01176-FMO (SHKx)
)
) MEMORANDUM OF POINTS AND
) AUTHORITIES IN SUPPORT OF
) DEFENDANTS' MOTION FOR
) PARTIAL JUDGMENT ON THE
) PLEADINGS AS TO THE THIRD
) CAUSE OF ACTION
)
)
) Date:      October 25, 2018
) Time:      10:00 a.m.
) Ct. Rm.: 6D
) Hon. Fernando M. Olguin
)
)

/ / /

/ / /

/ / /

/ / /

Defendants, Soleil Management, LLC, Club De Soleil Vacation Club, and Tahiti Village Vacation Club,[1] respectfully submit this memorandum of points and authorities in support of their motion for partial judgment on the pleadings as to the Third Cause of Action.

## I.

## INTRODUCTION

**A.    The Parties**

*(1)    Plaintiff Mitchell Sussman, Esq.*  The sole plaintiff in this action is Palm Springs attorney Mitchell Sussman ("Plaintiff" or "Mr. Sussman"). According to Mr. Sussman's website, he is an attorney that helps consumers escape the "burdens" of timeshare ownership by getting them out of their timeshare contracts.  *See* www.timesharelegalaction.com.  Interestingly, Mr. Sussman does not allege anywhere in the Complaint that he (the sole plaintiff) owns any interest in any of the timeshare resorts that Soleil Management, LLC manages or the timeshare resorts with which Club de Soleil Vacation Club and Tahiti Village Vacation Club are affiliated as owners' associations.

*(2)    Defendant Soleil* **Management, LLC:**  This company is a Nevada limited liability company that is the property manager for various timeshare associations and condominium associations in Nevada and Florida, including for the Club de Soleil and Tahiti Village timeshare resorts in Las Vegas, Nevada.  It performs all of the activities for the associations, including collection of maintenance fees and handling the maintenance of the timeshare resorts and condominiums.  It does not market or sell timeshare interests in Nevada or anywhere else, nor has it ever done so.  It conducts timeshare resort management business only in Nevada and Florida.  Its only connection to the state of California

---

[1] Hereinafter, Soleil Management, LLC, Club De Soleil Vacation Club, and Tahiti Village Vacation Club will be referred to collectively as "Defendants."

is that it manages a single hotel known as Chateau at Lake La Quinta, in La Quinta, California.  The hotel is not a timeshare and is not connected to timeshare activities.  Soleil Management, LLC's principal place of business is Las Vegas, Nevada.  *See* the previously filed Declaration of Richard Rodriguez dated September 7, 2018 ("Rodriguez Declaration") [Docket No. 35-2], ¶¶ 2-4.

**(3)    Club de Soleil Vacation Club:**  This company is a Nevada non-profit corporation that is the timeshare owners' association (similar to a homeowners' association) for the Club De Soleil timeshare resort located in Las Vegas, Nevada.  It conducts business only in Las Vegas, Nevada.  It does not market or sell timeshare interests in Nevada or anywhere else, nor has it ever done so.  *See* the previously filed Declaration of Carl Hardin dated September 7, 2018 ("Hardin Declaration") [Docket No. 35-3], ¶ 2.

**(4)    Tahiti Village Vacation Club:**  This company is a Nevada non-profit corporation that is the timeshare owners' association for Tahiti Village Resort located in Las Vegas, Nevada.  It conducts business only in Las Vegas, Nevada.  It does not market or sell timeshare interests in Nevada or anywhere else, nor has it ever done so.  Hardin Declaration, ¶ 3.

**B.    Plaintiff's Conduct.**

Although Plaintiff claims on his website to be offering legal services, what he actually is doing has nothing to do with rendering legal advice.  Plaintiff regularly works and conspires with third parties to transfer to such third parties title to timeshare interests in order to attempt to excuse his so-called "clients" from paying assessments and costs associated with holding title to such timeshare interests.  Attached as Exhibit 1 to the previously filed Declaration of Monika Pawlus dated September 7, 2018 ("Pawlus Declaration") [Docket No. 35-4] is a chart showing the names of some owners of timeshare interests in Club de Soleil and Tahiti Village whom Mr. Sussman purported to represent (*i.e.*, so-called

"clients") and whose timeshare interests purportedly have been transferred to people who are affiliated with Mr. Sussman.  Typically, each transferee has received multiple timeshare interests.  For example, Terry Durst received at least four transfers of timeshare interests during 2017 from people who were Mr. Sussman's "clients."  Mr. Durst is a licensed real estate agent whose employing broker is none other than Mr. Sussman.  *See* the Pawlus Declaration, ¶ 4. Similarly, Jose Alex Gomez received at least nine transfers of timeshare interests during 2014-2017 from people who were Mr. Sussman's "clients."  Mr. Gomez is Mr. Sussman's "legal assistant/client services manager."  Pawlus Declaration, ¶ 5. Likewise, Steve Peyton received at least five transfers of timeshare interests during 2016 and 2017 from people who were Mr. Sussman's "clients."  Mr. Peyton is employed at Mr. Sussman's law office.  Pawlus Declaration, ¶ 6.  And Tom Sanford received at least seven transfers of timeshare interests during 2013-2017 from people who were Mr. Sussman's "clients."  Mr. Sanford is employed in Mr. Sussman's "client intake department."  Pawlus Declaration, ¶ 7.

Aside from the transferees all being closely associated with Mr. Sussman, a common thread in these transfers is these associates of Mr. Sussman have paid none of the monthly assessments that they, as purported new owners of the timeshare interests, owe to the owners' associations.  Pawlus Declaration, ¶ 8.

Mr. Sussman's fraudulent scheme to deprive the owners' associations of monthly assessments owed to them violates Nevada Revised Statutes 119A.720, which provided, in pertinent part, as follows:

> 1. Except as otherwise provided in subsection 3, any person other than a person described in paragraph (a) of subsection 3 of NRS 119A.4771 or a developer or an association that is offering time shares in a time-share plan which is registered by such a developer or an association or which is exempt from registration in this State, who knowingly participates, for consideration or with the expectation of consideration, in any plan or scheme, a purpose of which is to transfer a previously sold time share to a transferee who does not have the

/ / /

-3-

ability, means or intent to pay all assessments and taxes for that time share commits a false, misleading or deceptive act or practice for the purposes of NRS 207.170, 207.171, 598.0915 to 598.0925, inclusive, and chapters 598A and 599A of NRS.

2. ***The failure of a transferee to pay assessments or taxes that come due after the acquisition of a previously sold time share by a person who acquires the time share for commercial purposes creates a rebuttable presumption of a violation of this section***.

NRS 119A.720 (emphasis added). In addition, a person who knowingly misrepresents the legal rights, obligations, or remedies of a party to a transaction engages in a deceptive trade practice under Nevada Law. *See* NRS 598.092(8). And failure to disclose facts in connection with the sale of goods or services also can constitute a deceptive trade practice. *See* NRS 598.0923(2). Furthermore, conducting a business without the required license also constitutes a deceptive trade practice, and Nevada law requires a person who assists in the transfer of more than 12 timeshare interests in any 12-month period to have a Nevada broker's license and to register as a timeshare resale broker. *See* NRS 598.0923(2), 119A.4771; *see also* NRS 645.230(1)(A) (it is unlawful to act as a real estate broker without a license from the Nevada Real Estate Division). Mr. Sussman is not a licensed broker in the state of Nevada,[2] yet during the period of June 1, 2016 through May 31, 2017 alone, he assisted in the transfer of at least 14 timeshare interests. *See* the Pawlus Declaration, Exhibit 1. He clearly is violating Nevada law, and he is engaging in multiple forms of deceptive trade practices.

Defendants contend that Mr. Sussman's conduct also violates the Lanham Act on account of his false and misleading advertising, including his failure to disclose in his advertising that he is violating Nevada law and engaging in

/ / /

/ / /

---

[2] *See* https://red.prod.secure.nv.gov/Lookup/LicenseLookup.aspx.

-4-

multiple false, misleading, and deceptive trade practices.[3]   *See* 15 U.S.C.§ 1125 (violations include the use in commerce of a false or misleading representation of fact which misrepresents the nature, characteristics, or qualities of his or another's goods, services, or commercial activities).

Defendants further contend that Mr. Sussman is violating civil RICO (18 U.S.C. § 1962(c), (d)) because he is engaged in a fraudulent and deceptive scheme to violate Nevada law and to deprive Club de Soleil Vacation Club and Tahiti Village Vacation Club of monthly assessments that are used to maintain the timeshare real properties.  In a similar case involving plaintiffs that included timeshare owners' associations, the United States District Court for the Middle

---

[3] The false and misleading information related to Mr. Sussman's website includes his failure to disclose that: (1) his actions and conspiracies violate Nevada law and otherwise are not legitimate means of releasing the so-called "clients" from liability; (2) his actions and conspiracies may leave the so-called "clients" exposed to liability and/or increase their liability, including because the purported transfers of title likely are fraudulent, voidable, void, and/or otherwise invalid; and (3) his actions and conspiracies do not involve the rendering of legal services, such that the so-called "clients" are more appropriately referred to as "customers," who pay a fee to have title to their timeshare interests transferred to a third party who has no intention of paying fees or costs associated with holding title to the timeshare interest.   Plaintiff's web site also falsely represents that he will cancel the timeshare contract, when in fact, the fraudulent and unlawful transfer of title to a third party does not constitute cancellation of a timeshare contract.  The web page also falsely represents that Mr. Sussman is dedicated to "consumer protection," and has "pioneered the field of timeshare exit," which imply the use of lawful and appropriate means to protect a consumer rather than what Mr. Sussman actually is doing, which is engaging in deceptive, fraudulent, and unlawful actions and conspiracies with third parties.  The web page also falsely represents that Mr. Sussman will put the client's interests first when in fact he likely is exposing the clients to further liability and/or is advising the clients to engage in unlawful and fraudulent practices.  The web page also falsely represents that Mr. Sussman is not trying to sell anything, when in fact, he is selling, and charging the "clients" for, the purported transfer of their timeshare interests pursuant to an unlawful and fraudulent scheme.

District of Tennessee found the defendants to have violated civil RICO by promising to relieve timeshare owners of their obligations under their timeshare contracts (which is what Mr. Sussman promises) and by transferring timeshare interests to others who had neither the means nor the intention to pay the monthly assessments owed to the owners' associations (which is what Mr. Sussman does). *See Wyndham Vacation Resorts, Inc. v. VP Transfers, LLC*, 2013 WL 4510954 (W.D. Tenn. August 27, 2013).

Pursuant to an exchange of correspondence during May of 2018, Defendants' counsel informed Mr. Sussman that Defendants intended to commence litigation in Nevada against him and his co-conspirators. Pawlus Declaration, ¶ 9. Mr. Sussman quickly sprang into action.

**C.      The Instant Litigation**

Mr. Sussman sought to avoid being hauled into U.S. District Court in Las Vegas where the effects of his and his co-conspirators' conduct manifested. So he devised a new scheme, this time to manipulate venue to his liking. On May 31, 2018, Plaintiff commenced this declaratory relief action in the Central District of California, which is the district in which he conducts his business (and likely resides).

Pursuant to the First and Second Causes of Action, Plaintiff seeks a declaration that his conduct does not violate the Lanham Act or civil RICO. *See* the Complaint [Docket No. 1]. Those causes of action relate to Plaintiff's advertising and whether he has violated federal law. However, the Third Cause of Action does not address Plaintiff's advertising at all. Pursuant to that cause of action, Plaintiff asserts that a controversy exists and that a judicial declaration is needed so that the parties "may ascertain their rights and duties under the [California Act]." Complaint, ¶¶ 32-34. Plaintiff seeks a "declaration that [D]efendants are in violation of California's Vacation and Timeshare Act of 2004 and are required to register with the [California Bureau of Real Estate]."

Complaint at p. 8.  (Hereinafter, the California Vacation Ownership and Timeshare Act of 2004 will be referred to as the "California Act.")  However, Plaintiff fails to allege any facts that would support his standing to assert the Third Cause of Action.

As discussed below, Plaintiff lacks standing to bring the Third Cause of Action because Plaintiff alleges no facts indicating that he has either (i) constitutionally required Article III standing to assert that cause of action (which requires an injury, a causal connection between the injury and Defendants' conduct, and a likelihood that the injury will be redressed by a favorable decision), or (ii) prudential standing to assert that cause of action (which requires Plaintiff to be asserting his own rights rather than the rights of others).  As a result, partial judgment on the pleadings should be granted as to the Third Cause of Action.

## II.

## A CLAIM MUST STATE SUFFICIENT FACTS WHICH, WHEN ASSUMED TRUE, ESTABLISH THE CLAIM AS PLAUSIBLE.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  F.R. Civ. P. 12(c).  Pleadings are closed when the various pleadings permitted by Rule 7(a) have been filed.[4]  *See Flora v. Home Federal Sav. & Loan*, 685 F.2d 209, 210 n.4 (7th Cir. 1982); F.R. Civ. P. 7(a).

A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss under Rule 12(b)(6).  *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011); *Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1089 (C.D. Cal. 2011) ("Rules 12(b)(6) and 12(c) are substantively identical"); *Ross v. U.S. Bank Nat'l Ass'n*,

---

[4] The pleadings in the instant litigation are closed because Plaintiff filed a Complaint [Docket No. 1] and Defendants filed answers [Docket Nos. 24, 25, 26].

542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008) (same).  In considering a motion for judgment on the pleadings, a court

> must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. . . .  Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.

*Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  A claim cannot survive a motion for judgment on the pleadings if it fails to contain sufficient factual matter which, when accepted as true, states a claim that is plausible on its face.  A claim is plausible on its face "when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Chavez v. United States*, 683 F.3d 1102, 1108-1109 (9th Cir. 2012) (under both Rule 12(b)(6) and Rule 12(c), "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy";  the *Twombly / Iqbal* plausibility standard applies to a motion for judgment on the pleadings); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.) (a motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)), *cert. denied*, 129 S.Ct. 600 (2008).  Similarly, a claim based on mere labels and conclusions or on a simple recitation of the elements of a cause of action is not sufficient, nor is a claim that offers "naked assertions" without factual enhancement.  *See Ashcroft v. Iqbal*, 556 U.S. at 678.

A motion for partial judgment on the pleadings is appropriate when directed to less than all claims contained in a complaint.  *See  Curry v. Baca*, 497 F. Supp. 2d 1128, 1130 (C.D. Cal. 2007)*; Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005); *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2015) ("it is common to apply Rule 12(c) to individual causes of action").

-8-

As discussed below, Plaintiffs' purported Third Cause of Action for a declaration that Defendants are subject to and in violation of the California Act, and that Defendants are required to register with the California Bureau of Real Estate, fails to allege sufficient facts to establish Plaintiff's plausible standing to assert such a claim.

## III.
## STANDING IS REQUIRED TO PROSECUTE
## A CLAIM IN FEDERAL COURT.

"Standing" refers to whether "the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, (2004), *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The concept of standing imposes a jurisdictional limitation: It is an essential part of the case-or-controversy requirement of Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue"). As such, a lack of standing cannot be waived and, like subject matter jurisdiction, standing must be considered by federal courts even if the parties fail to raise it. *United States v. Hays*, 515 U.S. 737, 742 (1995); *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011) (the court may raise standing at any time sua sponte, even for the first time on appeal); *but see Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 899-900 (9th Cir. 2000) (prudential standing, as contrasted to constitutional standing, can be waived by failing to raise it as an issue for trial in the pretrial order); *Semano v. Kaiser Foundation Health Plan*, 2008 WL 11337732, at *4 (C.D. Cal. August 27, 2008) (objection to non-constitutional standing waived by defendant's failure to object to standing in its answer).

The doctrine of standing is comprised both of constitutional (or Article III) requirements and of prudential considerations. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007). To have constitutional standing, a plaintiff must, at a minimum, show the following: (1) plaintiff suffered an "injury in fact" that is concrete and particularized;[5] (2) there is a causal connection between plaintiff's injury and defendant's conduct or omissions; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

In contrast to Article III standing, prudential standing refers to the requirement that a plaintiff must assert his, her, or its own legal rights and interests, rather than the legal rights or interests of third parties. *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 15-18 (2004) (father lacked prudential standing to challenge school policy requiring daughter to recite pledge of allegiance), *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*, 778 F.3d 502, 504, 506 (5th Cir. 2015) (a party must assert its own right to sue and cannot assert the legal rights of third parties).

Standing is required for each claim and form of relief sought: A plaintiff must demonstrate standing for each claim and each form of relief sought. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

Finally, although the Federal Rules of Civil Procedure require only a "short and plain statement" showing plaintiff is entitled to relief, plaintiff must "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," and if plaintiff fails to do so, he or she has no standing. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

---

[5] An "injury in fact" is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent," "not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, __ U.S. ___,136 S.Ct. 1540, 1548 (2016).

## IV.

## PLAINTIFF LACKS STANDING TO ASSERT

## THE PURPORTED THIRD CAUSE OF ACTION.

Applying the foregoing principles to the instant action, the Complaint contains no allegations whatsoever that indicate Plaintiff has standing to assert the Third Cause of Action. For example, Plaintiff does not allege that he owns a timeshare interest, let alone a timeshare interest that he purchased from one of the Defendants. (As noted above, Defendants do not market or sell timeshare interests, so Plaintiff never will be able to allege he purchased one from them.) Nor does Plaintiff allege that he would be affected personally in any way if he obtained a declaration from the Court that Defendants are subject to the California Act, that Defendants are in violation of the California Act, and/or that Defendants must register with the California Bureau of Real Estate pursuant to the California Act. Specifically, Plaintiff has not alleged any facts whatsoever suggesting that: (1) he suffered or is likely to suffer some "injury in fact" that is concrete and particularized; (2) there is a causal connection between any injury (or threatened injury) and Defendants' conduct or omissions; and (3) there is a likelihood that any injury will be redressed by a favorable decision. Indeed, a decision from the Court whether or not any of the Defendants are subject to the California Act, including any requirement to register with the California Bureau of Real Estate, could not possibly affect Plaintiff in any manner, nor does he allege any facts that plausibly would allow a conclusion otherwise. As a result, Plaintiff lacks Article III standing to assert the Third Cause of Action, and that cause of action must be dismissed.[6]

---

[6] Why is Plaintiff asserting the Third Cause of Action, and for what purpose? Perhaps Plaintiff seeks declaratory relief under the California Act so that he can take some other action in the future on behalf of one or more unidentified client(s) who are not parties to this action. Of course, such a purpose

Turning to prudential standing, Plaintiff is attempting to establish, on behalf of some unidentified person other than himself, that Defendants are subject to the California Act, are in violation of the California Act, and must register with the California Bureau of Real Estate pursuant to the California Act. He cannot possibly be asserting his own rights, as he has not even alleged that he owns a timeshare interest, let alone one that he acquired from the Defendants (who never have sold or marketed timeshare interests). Prudential standing does not exist because Plaintiff is not entitled to assert the rights of others but must assert only his own rights. Again, the Third Cause of Action must be dismissed.

Finally, Defendants raised Plaintiff's lack of standing in their Answers, so Plaintiff cannot argue that Defendants waived the lack of standing. *See* Docket Nos. 24, 25, 26 (Seventh Affirmative Defense). And even if Defendants somehow were deemed to have waived the lack of prudential standing, the lack of Article III standing cannot be waived, as discussed above.

Based on the forgoing, because Plaintiff has not alleged sufficient facts to establish his standing to bring the Third Cause of Action, partial judgment on the pleadings should be granted as to that cause of action, and that cause of action should be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

---

would underscore Plaintiff's own lack of standing. Alternatively, Plaintiff could be seeking to manipulate venue in this action by claiming that Defendants violated California law such that venue purportedly lies in California. As explained in Defendants' pending motion for a transfer based on improper venue, or alternatively for a convenience transfer, venue does not lie anywhere in California, and Plaintiff is forum shopping. *See* Docket No. 35-1.

## V.

## CONCLUSION

For the reasons stated above, Plaintiff fails to allege facts indicating that he has standing to assert the Third Cause of Action.  Plaintiff will not be able to allege such facts.  Therefore, Defendants are entitled to partial judgment on the pleadings, and the Third Cause of Action must be dismissed with prejudice.

Dated: September 27, 2018

CURRY ADVISORS
A Professional Law Corporation

/s/ K. Todd Curry

By: _____

K. Todd Curry
Counsel for Defendants
Soleil Management, LLC,
Club de Soleil Vacation Club, and
Tahiti Village Vacation Club
email:  tcurry@currylegal.com

-13-