**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Mitchell Reed Sussman, | Case No.: 2:18-cv-02218-JAD-BNW |
| Plaintiff | **Order Denying Defendants' Motion for Judgment on the Pleadings, Granting Plaintiff's Motion for Summary Judgment, and Closing this Case** |
| v. | |
| Soleil Management, LLC, et al., | |
| Defendants | [ECF Nos. 73, 91] |

    Plaintiff Mitchell Reed Sussman is an attorney specializing in timeshare cancellation and relief. Soleil Management LLC, Club de Soleil Vacation Club, and Tahiti Village Vacation Club (collectively, Soleil) manage timeshare properties and market, sell, finance, and administer timeshare products. Soleil sent Sussman a cease-and-desist letter threatening legal action for violations of the Nevada Deceptive Trade Practices Act, the Nevada and federal Racketeer Influenced and Corrupt Organizations (RICO) acts, and the Lanham Act. Sussman then filed a suit under the Declaratory Judgment Act in the U.S. District Court for the Central District of California, requesting a declaration that he is not in violation of the Lanham Act, the federal RICO act, and the California Vacation Ownership and Time-share Act. Soleil then successfully moved for transfer to this court.

    Soleil now moves for partial judgment on the pleadings on Sussman's claim for a declaration that Soleil violated the California Vacation Ownership and Time-share Act, arguing that Sussman does not have standing to seek declaratory relief on that claim. Sussman moves for partial summary judgment on his declaratory-relief claims under RICO and the Lanham Act. Because federal courts do not recognize the public-interest-standing doctrine and Sussman does

not allege facts showing that he has standing under the *jus tertii* doctrine, I grant Soleil's motion for partial judgment on the pleadings. But I also grant Sussman's motion for partial summary judgment because Soleil does not respond to the motion with evidence showing that there are genuine issues of material fact for trial.

## Background

Sussman, an attorney who specializes in counseling and assisting timeshare owners seeking a release from the financial obligations of their timeshares, owns and operates the website www.timesharelegalaction.com.[1] Sussman's website does not reference Soleil.[2] The website encourages potential clients to first call their timeshare company to see if it is willing to voluntarily take back the timeshare, and Sussman only agrees to represent clients who affirmatively state that they first attempted to resolve the matter with the timeshare company.[3] After being retained, Sussman typically sends a letter on behalf of the client to the timeshare company.[4]

Sussman's website offers in large print to "Cancel Your Timeshare Contract and End Your Timeshare Obligations Forever, Even if You Have a Mortgage!"[5] Sussman states, however, that he has never guaranteed a particular result to his clients.[6] Sussman does offer a

---

[1] ECF No. 91-1 at ¶¶ 1, 6.
[2] ECF No. 91-2.
[3] ECF No. 91-1 at ¶¶ 9–10; ECF No. 91-2 at 3.
[4] ECF No. 91-1 at ¶ 9.
[5] ECF No. 91-2 at 2.
[6] ECF No. 91-1 at ¶ 12.

policy of 100% client satisfaction, but no current or prior timeshare client has ever requested a refund.[7]

In May 2018, attorneys representing Soleil sent Sussman a letter threatening legal action.[8] In that letter, Soleil accuses Sussman of enticing timeshare owners to transfer their timeshare ownership rights to individuals associated with Sussman, causing the owners to pay Sussman money in lieu of paying their timeshare obligations.[9] Sussman sent at least two letters informing the timeshare owners that their interests had been transferred and that they were no longer responsible for future fees in connection with their timeshares.[10] The letter claimed that Sussman's practices violated the Nevada Deceptive Trade Practices Act, federal and state RICO, and the Lanham Act.[11] With respect to the Lanham Act, the letter claimed that Sussman's promise to "Cancel Your Timeshare Contract and End Your Timeshare Obligations Forever, Even if You Have a Mortgage!" constituted false advertising.[12] The letter threatened legal action if Sussman did not respond or comply within fifteen days.[13]

Sussman responded by filing this suit for declaratory relief in the U.S. District Court for the Central District of California.[14] Soleil filed answers and amended answers to Sussman's complaint, but did not assert any counterclaims.[15] Ten months after filing of this suit, and after

---

[7] *Id.*
[8] ECF No. 91-1 at ¶ 13; ECF No. 99-1.
[9] ECF No. 99-1 at 3.
[10] ECF No. 98-1 at 2–3.
[11] ECF No. 99-1 at 3–5.
[12] *Id.* at 5.
[13] *Id.* at 6.
[14] ECF No. 1; ECF No. 91-1 at ¶ 14.
[15] ECF Nos. 18–20, 24–26.

transfer to this court, Soleil moved for leave to amend its answers to assert counterclaims.[16] Magistrate Judge Weksler issued a report and recommendation that I deny the motion because the counterclaims were untimely and Soleil failed to demonstrate good cause for its untimely motion.[17] After no party objected to Judge Weksler's report and recommendation, I adopted it in full and denied Soleil's motion for leave to amend.[18]

## Discussion

### I. Motion for partial judgment on the pleadings [ECF No. 73]

Sussman seeks a declaration that Soleil is in violation of the California Vacation Ownership and Time-share Act because Soleil is not registered with the California Bureau of Real Estate.[19] Soleil moves for judgment on the pleadings, arguing that Sussman does not have standing to seek such a declaration.[20] Sussman responds that he has standing under the public-interest-standing or *jus tertii* doctrines.[21]

"'A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'"[22] The moving party bears the burden of establishing that, "on the face of the pleadings[,]" no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of

---

[16] ECF No. 63.
[17] ECF No. 100.
[18] ECF No. 106.
[19] ECF No. 1 at ¶¶ 30–34.
[20] ECF No. 73.
[21] ECF No. 75.
[22] *U.S. v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016) (quoting *Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)).

law."[23] A Rule 12(c) motion is the functional equivalent of a Rule 12(b)(6) motion.[24] As with a Rule 12(b)(6) motion, when ruling on a Rule 12(c) motion, federal courts "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."[25]

For this court to have jurisdiction over any case, "the party bringing the suit must establish standing."[26] Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[27] There are two aspects to standing: Article III standing, which requires a case or controversy, and prudential standing, which "encompasses[, among other things,] the general prohibition on a litigant's raising another person's legal rights . . . ."[28] *Jus tertii* standing allows a litigant to assert the rights of a third person if (1) the litigant has suffered an injury in fact, (2) the litigant has a "close relationship" to the third party, and (3) there is some hindrance to the third party's ability to protect his or her own interests.[29] As an illustration of such standing, in *Singleton v. Wulff,* the United State Supreme Court held that a physician had standing to challenge restrictions on abortion funding because the physician would benefit from the suit, the physician-patient relationship was

---

[23] *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).
[24] *See Harris v. Orange Cty.*, 682 F.3d 1126, 1131 (9th Cir. 2012).
[25] *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).
[26] *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).
[27] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).
[28] *United States v. Lazarenko*, 476 F.3d 642, 650 (9th Cir. 2007) (quotation omitted).
[29] *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see also Quixtar Inc. v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 1205, 1215 (D. Nev. 2008).

5

sufficiently close, and several obstacles prevented women from asserting their own rights, including mootness and desire to avoid the publicity of a lawsuit.[30]  Under California law, a citizen may bring suit under the public-interest-standing doctrine "without the necessity of showing a legal or special interest in the result where the issue is one of public right and the object is to procure the enforcement of a public duty[,]" but the doctrine is "contrary to the rules in federal courts."[31]

Sussman cites only California cases to support his contention that he has public-interest standing to obtain a declaration that Soleil is in violation of the California Vacation Ownership and Time-share Act.[32]  Because Sussman has not identified, and I have not found, any authority suggesting that federal courts recognize public-interest standing in this context, he has not established standing on this ground.  As for *jus tertii*, Sussman fails to plead any facts showing his injury or obstacles preventing third-parties from asserting their own rights.  Unlike in *Singleton*, publicity concerns do not prevent a timeshare owner from pursuing legal action against a timeshare operator.  Indeed, Sussman's practice specializes in assisting timeshare owners obtain cancellation and relief on their own behalf.[33]  So I grant Soleil's motion for judgment on the pleadings on Sussman's claim for a declaration that Soleil is violating the California Vacation Ownership and Time-share Act.

---

[30] *Singleton v. Wulff*, 428 U.S. 106, 117 (1976).

[31] *Connerly v. State Pers. Bd.*, 92 Cal. App. 4th 16, 29 (Cal. Ct. App. 2001).

[32] ECF No. 75 at 6–7.

[33] ECF No. 1 at ¶ 1.  For purposes of determining Soleil's motion for judgment on the pleadings, I do not consider Sussman's declaration submitted in support of his motion for partial summary judgment.  ECF No. 91-1.

## II. Motion for partial summary judgment [ECF No. 91]

Sussman moves for partial summary judgment on his claims for a declaration that he is not in violation of the Lanham Act and federal RICO, arguing that Soleil cannot establish standing or causation under the Lanham Act; that Soleil cannot establish predicate acts, a pattern of racketeering, or proximate cause under RICO; and that his actions are protected by anti-SLAPP statutes and the Noerr-Pennington doctrine.[34] Soleil responds that Sussman seeks an improper advisory opinion, it is premature to enter a declaration regarding the Lanham Act, and that mail and wire fraud constitute a sufficient criminal basis for a claim under the Federal RICO statute.[35]

### A.  Standard under the Declaratory Judgment Act

The Declaratory Judgment Act (DJA) allows federal courts to "declare the rights and other legal relations" of parties to "a case of actual controversy."[36] District courts "must first inquire whether there is an actual case or controversy within its jurisdiction."[37] After finding that an actual case or controversy exists, "the court must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co*. and its progeny."[38] However, the Ninth Circuit has held that if the parties do not raise *Brillhart* abstention, "the district court may entertain the action without sua sponte addressing whether jurisdiction should

---

[34] ECF No. 91.

[35] ECF No. 98.

[36] 28 U.S.C. § 2201.

[37] *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

[38] *Id.* (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)) (internal citation omitted).

7

be declined."[39]  I address only the first prong because Soleil does not address whether I should exercise my discretion under *Brillhart* to not entertain the declaratory-judgment action.[40]

An actual case or controversy exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[41]  The "plaintiff [must have] a real and reasonable apprehension that he will be subject [to suit]."[42]  And because that apprehension is considered from the plaintiff's "position and perceptions[,]" federal courts need not identify "specific acts or intentions of the defendant that would automatically constitute a threat of litigation."[43]  Numerous courts have held that receipt of a letter threatening litigation satisfies the actual-case-or-controversy requirement for purposes of the DJA.[44]

In May 2018, Sussman received a cease-and-desist letter from Soleil informing him that his practice of advising his clients to transfer their timeshare interests to transferees with no intention of paying any maintenance fees violated the Lanham Act and RICO.[45]  The letter promises that "a Nevada Federal Court judge" will also conclude that Sussman's purported

---

[39] *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998).

[40] ECF No. 98 at 4–6 (arguing only that the action does not present an actual case or controversy).

[41] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations and quotation marks omitted).

[42] *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938, 944 (9th Cir. 1981).

[43] *Chesebrough–Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).

[44] *See, e.g.*, *E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632, 634 (9th Cir. 2014); *Turo Inc. v. City of Los Angeles*, No. 2:18-CV-06055-CAS(GJSX), 2019 WL 186608, at *4 (C.D. Cal. Jan. 14, 2019).

[45] ECF No. 99-1.

scheme violates RICO.[46] The letter requests compliance or communication within 15 days, after which Soleil "will have no choice but to institute action against each you [*sic*]."[47] Evaluating the letter from Sussman's perspective, it is clear that he had a real and reasonable apprehension that he would be subject to suit, so I entertain his request for a declaratory judgment.

### B.   Summary-judgment standard

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[48] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[49] When the plaintiff bears the burden of proof at trial "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[50] The burden then shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[51] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[52]

This is an unusual case because Sussman seeks a declaration of non-liability but Soleil did not timely file counterclaims alleging that Sussman is indeed liable.[53] In *Medtronic, Inc. v.*

---

[46] *Id.* at 5.
[47] *Id.* at 6.
[48] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[49] *Id.* at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).
[50] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citation and quotations omitted)).
[51] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[52] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).
[53] ECF No. 100.

*Mirowski Family Ventures, LLC*, the United States Supreme Court held that in a licensee's declaratory judgment action against a patentee, the burden of proving infringement remains with the patentee, explaining: "We have long considered the operation of the Declaratory Judgment Act to be only procedural, leaving substantive rights unchanged. And we have held that the burden of proof is a substantive aspect of a claim."[54] Had Soleil filed the suit it threatened in its letter, Sussman could satisfy his initial burden on summary judgment by showing "a complete failure of proof concerning an essential element of [Soleil's] case . . . ."[55] Because *Medtronic*'s logic applies equally to this case, I apply the same standard here.

### C.     The Lanham Act

Section 43(a) of the Lanham Act creates a federal remedy against a person who, in connection with any goods or services, uses a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in commercial advertising that misrepresents the nature, characteristics, or qualities of the goods or services.[56] In *Lexmark International, Inc. v. Static Control Components, Inc.*, the United States Supreme Court outlined a two-part test for who has the right to bring a Lanham Act false advertising claim.[57] First, the plaintiff must establish "an injury to a commercial interest in reputation or sales" to come within the zone of interests protected by the Act.[58] Second, to establish proximate cause, the plaintiff must establish "economic or reputational injury flowing directly from the deception wrought by

---

[54] *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (quotations and citations omitted).

[55] *Celotex,* 477 U.S. at 323.

[56] 15 U.S.C. § 1125(a).

[57] *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

[58] *Id.* at 131-32.

10

the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."[59]

In its cease-and-desist letter and opposition to Sussman's motion for summary judgment, Soleil identifies as false advertising one statement on Sussman's website: "Cancel Your Timeshare Contract and End Your Timeshare Obligations Forever, Even if You Have a Mortgage!"[60] But Sussman's website does not instruct timeshare owners to cease payments to their timeshare company. Instead, it cautions customers to first seek a release from their timeshare company, and the undisputed evidence shows that it is Sussman's practice to require potential clients to first seek a release from their timeshare company. Sussman has thus demonstrated that an intervening event—Soleil's denial of a timeshare owner's request for a release—disrupts the chain of causation between statements on Sussman's website and Soleil's claimed injuries. So Sussman satisfies his burden to show a failure of proof as to an element of Soleil's Lanham Act claim—namely, that its injuries flowed directly from Sussman's false advertising.

Rather than respond with evidence that this intervening event does not interrupt the chain of causation between Sussman's false advertising and Soleil's claimed injuries, Soleil argues that entering summary judgment on Sussman's Lanham Act claim is premature. But Soleil does not comply with Rule 56(d)'s requirement that it show by affidavit or declaration that it cannot present facts essential to justify its opposition. Instead, Soleil states that, "[i]n the event that [it was] inclined to consider bringing a future claim against [Sussman] under the Lanham Act, [Soleil] would be inclined to incur the expenses of performing discovery and proving an

---

[59] *Id.* at 133.

[60] ECF No. 98 at 7; ECF No. 99-1.

11

affirmative claim."[61] In other words, Soleil doesn't believe that Sussman has alleged a real claim necessitating discovery, but he has: Sussman challenges the legitimacy of Soleil's legal threats. Needless to say, Soleil's mistaken belief does not excuse its failure to carry its burden on Sussman's motion for summary judgment on his declaratory relief claim. Indeed, the "Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation [that] a harassing adversary might brandish, while initiating suit at his leisure—or never."[62] This case has been pending for almost two years, Sussman has been deposed,[63] and discovery closed five months ago.[64] And Soleil's attorneys presumably had some basis for threatening Sussman with litigation under the Lanham Act. So I grant summary judgment in favor of Sussman on his claim for declaratory relief under the Lanham Act.[65]

### D.   RICO

Under the federal RICO statute, it is a crime "to use or invest" the "income derived, directly or indirectly, from racketeering activity."[66] The statute also "provides a private right of action for '[a]ny person injured in his business or property' by a RICO violation."[67] "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4)

---

[61] ECF No. 98 at 7.

[62] *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966).

[63] ECF No. 98 at 8 n.5.

[64] ECF No. 97.

[65] Had Soleil carried its burden on summary judgment, I would find that no genuine issue of material fact exists as to whether the statement constitutes non-actionable puffery, is literally true, and is not misleading. *See infra* at 13.

[66] 18 U.S.C. § 1962(a).

[67] *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (alteration in original) (quoting 18 U.S.C. § 1964(c)).

12

of racketeering activity (5) causing injury to plaintiffs' 'business or property.'"[68] Under federal law, a person engages in a pattern of racketeering activity by committing at least two enumerated predicate criminal acts within a specified timeframe.[69]

Mail and wire fraud are enumerated predicate criminal acts under the federal RICO statute.[70] These offenses require proof of "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud."[71] The mail or wire fraud underlying a RICO claim must involve "quantifiable [and] actionable misstatements" rather than "highly subjective, generalized statements" that constitute puffery.[72]

There are two categories of statements in the record that arguably support a scheme to defraud: (1) the statement on Sussman's website ("Cancel Your Timeshare Contract and End Your Timeshare Obligations Forever, Even if You Have a Mortgage!")[73] and (2) statements in letters that Sussman sent to his clients informing them that, because they no longer own the time share interest, they "are not responsible for future fees in connection with the timeshare."[74] Sussman has shown a failure of proof that these statements were false or misleading. The statement on the website is puffery and, in any event, state-law remedies permitting recession or

---

[68] *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. § 1964(c)).

[69] 18 U.S.C. § 1961(1), (5).

[70] *Id.* § 1961(1).

[71] *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010).

[72] *Cty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011); *see also Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (finding statements that a company would deliver flexibility and lower costs was puffery, while finding statement that contracts would expire after specific term of sixty months actionable).

[73] ECF No. 91-2.

[74] ECF No. 98-1.

cancellation of a timeshare render the statement on Sussman's website literally true.[75] And I find that the statement is not misleading in context because the website proceeds to explain how a timeshare may be rescinded or cancelled under general contract remedies.[76] Soleil suggests that the letters are false because Sussman's clients have continuing contractual obligations to pay maintenance fees.[77] But there are no contracts or any other evidence in the record to support this contention, so there is no evidence to support Soleil's assertion that the statements in the letters are false or misleading. Sussman has therefore shown a failure of proof of the pattern of racketeering activity necessary to Soleil's threatened RICO claim.

Soleil responds by first pointing to a U.S. District Court for the Middle District of Tennessee decision granting a motion for leave to amend to add a similar civil RICO claim.[78] But that court addressed the sufficiency of the plaintiff's proposed pleadings—not the evidence in the record.[79] Soleil argues that Sussman's statements in his website and letters were fraudulent, but it does not produce any evidence raising a genuine issue of material fact that they were false or misleading and thus constituted a scheme to defraud necessary to its RICO claim. Soleil also suggests that summary judgment is premature on Sussman's RICO claim, stating that "[o]nce presented with all the facts, there is a strong likelihood that this Court would rule similarly on the instant matter as did the [U.S. District Court for the Middle District of Tennessee]."[80] This statement is confusing because Soleil's response to Sussman's summary-

---

[75] *See* ECF No. 91 at 16 (describing remedies).

[76] ECF No. 91-2.

[77] ECF No. 98 at 9–10.

[78] *Wyndham Vacations Resorts, Inc. v. The Consulting Grp., Inc.*, No. 2:12-CV-00096, 2013 WL 3834047, at *8 (M.D. Tenn. July 23, 2013).

[79] *Id.*

[80] ECF No. 98 at 10.

judgment motion was its opportunity to present me "with all the facts"; it simply failed to do so. So I grant summary judgment in favor of Sussman on his claim for a declaration that he is not in violation of the federal RICO act.[81]

### Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Soleil's motion for judgment on the pleadings **[ECF No. 73] is GRANTED.** I grant judgment on the pleadings in favor of Soleil on Sussman's claim for a declaration that Soleil is in violation of the California Vacation Ownership and Time-share Act. The Clerk of Court is directed to **ENTER FINAL JUDGMENT in favor of Soleil Management LLC, Club de Soleil Vacation Club, and Tahiti Village Vacation Club and against Mitchell Sussman on Sussman's claim for a declaration that Soleil is in violation of the California Vacation Ownership and Time-share Act.**

**IT IS FURTHER ORDERED** that Sussman's motion for partial summary judgment **[ECF No. 91] is GRANTED.** I grant summary judgment in favor of Sussman on his claims for a declaration that he is not in violation of the Lanham Act and the federal RICO statute. The Clerk of Court is directed to **ENTER FINAL JUDGMENT in favor of Mitchell Sussman and against Soleil Management LLC, Club de Soleil Vacation Club, and Tahiti Village Vacation Club on his claims for a declaration that he is not in violation of the Lanham Act and the federal RICO statute by the conduct described by Soleil in the May 2018 letter**. **The judgment should state that** "IT IS HEREBY ORDERED, ADJUDGED, AND DECLARED that (1) Sussman's website does not constitute false advertising in violation of the Lanham Act and (2) Sussman's representation of Soleil Management LLC, Club de Soleil

---

[81] I need not and do not address Sussman's other arguments for summary judgment.

15

Vacation Club, and Tahiti Village Vacation Club timeshare owners who wish to exit their timeshare obligations does not constitute a violation of the federal RICO statute."

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to CLOSE THIS CASE.

Dated: February 21, 2020

_____
U.S. District Judge Jennifer A. Dorsey